Samuel NAKASIAN, Plaintiff,

v.

INCONTRADE, INC., and its wholly-owned subsidiary, Fairfield County Company, Ltd., Defendants.

No. 75 Civ. 5050.

United States District Court, S. D. New York.

March 8, 1976.

Rosner, Rosner & McEvoy, New York City, for plaintiff.

Coudert Brothers, New York City, for defendants; Robert N. Hornick, Mark D. Lebow, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

This is an action to compel the specific performance of a contract and for an accounting and money damages. The action was commenced by an Order of Attachment dated October 14, 1975, attaching $8,000. of the funds of defendant. Fairfield County Co., Ltd. and $486,000. of the funds of the defendant Incontrade, Inc. On October 20, 1975, a consent order was entered directing defendants to file an undertaking in the amount of $150,000. and discharging the attachment, "without prejudice to defendants opposing plaintiff's motion for leave to prove grounds of his attachment and cross-moving to vacate such attachment on the ground that said Order of Attachment was improperly made or constituted an abuse of discretion." We deal here with the plaintiff's motion to prove grounds of attachment and the defendant's motion to vacate the attachment.

Nakasian, an attorney and an expert in the international oil business, alleges that Incontrade and Fairfield had contracted with him to assist them in the development of their business of buying and selling fuel oil. The defendants are both foreign corporations; Fairfield is incorporated in Connecticut and has its principal offices in that State while Incontrade is a corporation formed under the laws of the Bahama Islands. The plaintiff claims that he fulfilled his agreement to assist the defendants in securing oil sales contracts, but that the defendants breached their contract with the plaintiff in the following respects:

1) Incontrade breached a letter agreement of June 6, 1975, to deliver to the plaintiff 1,583 shares of its common stock for which plaintiff would pay $13.23 per share. The plaintiff seeks delivery of the shares or, in the alternative, payment of the book value of the shares plus payments by the defendant equal to 19% of the gross profits of the defendant for at least five years, as may be verified by an accounting.

2) Incontrade breached its agreement that, if the plaintiff spent one-half his time developing the defendants' oil sales, the compensation for his services would be one-half the salary and benefits received by the President of Incontrade for the same period. According to this agreement, if the plaintiff spent more than one-half of his time on behalf of Incontrade, his compensation would be increased accordingly.

3) On July 11, 1975, the plaintiff put up $200,000. of his personal funds as collateral to support a Letter of Credit of $1,250,000. required by Incontrade to purchase a shipment of fuel oil. The plaintiff accepted as consideration 16% of the profits from the eventual sale of fuel oil by Incontrade. He claims, however, that, he "accepted this disproportionate share of the profits because he relied on defendant's representation that it would comply with said contract dated June 6, 1975." On this cause of action, the plaintiff seeks to recover money damages.

■ Defendants contend at the outset that even if the attachment was properly granted it should be vacated as to Fairfield. They claim that Fairfield, which was not a party to the plaintiff's contracts with Incontrade, is a corporate entity distinct from Incontrade and therefore not liable for the contracts between Incontrade and the plaintiff. The plaintiff's affidavits and supporting papers, however, reveal *inter alia* that, in December of 1973, the principal officers of Incontrade acquired virtually all of the outstanding shares of Fairfield; that the President and Vice-President of Incontrade hold the same positions within the corporate structure of Fairfield; and that the Bahamian corporation was acquired to handle Incontrade's foreign transactions. (Affidavit in Reply to and in Opposition to Defendant's Cross-Motion, Exhibit A, n. 4). It is apparent that, giving the plaintiff all legitimate inferences that can be drawn from the present record, the plaintiff has established prima facie that Fairfield and Incontrade are not independent corporations but rather that Fairfield is a subsidiary of Incontrade. See *Worldwide Carriers, Ltd. v. Aris Steamship Co.*, 301 F.Supp. 64 (S.D.N.Y.1968). Attachment against Incontrade alone might easily be defeated if Incontrade were to transfer its assets and earnings to its subsidiary. See *Mull v. Colt Co.*, 31 F.R.D. 154, 163 (S.D.N.Y.1962). Accordingly, if plaintiff can prove adequate grounds for the order of attachment, attachment against the funds of both Incontrade and Fairfield is appropriate.

■ The New York attachment statute, N.Y.C.P.L.R. § 6201, provides in pertinent part:

> "An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
>
> 1. the defendant is a foreign corporation or not a resident of the state . . . . ."

Section 6201 represents to some extent a "legislative judgment that the property of foreign corporations . . . would be difficult to reach on execution." Legislative Studies and Reports at 34, N.Y. C.P.L.R. § 6201 (McKinney 1963); see 7a Weinstein-Korn-Miller ¶ 6201.08 (1967). The defendant has the burden of proving that the security provided by a bond given in lieu of attachment is unnecessary for the security of the plaintiff in recovering a judgment. *Zeiberg v. Robosonics, Inc.*, 43 Misc.2d 134, 250 N.Y.S.2d 368 (1964); *Marklin v. Drew Properties Corp.*, 280 F.Supp. 176, 179 (S.D.N.Y. 1967).

In the present case, the defendants do not claim that they have adequate property in New York to satisfy a judgment for the plaintiff. Rather they offer a self-serving declaration that "they are successful and reputable companies that have always paid their bills." (Defendants' Memorandum in Opposition to Plaintiff's Motion, at 14) If we were dealing with a nationally known corporation, such as General Motors, we might take judicial notice that its financial standing and dependability were such that no New York attachment was needed to secure payment of a judgment against it. But where, as here, 78% of the stock of the foreign corporation is in the hands of two of its officers, (Affidavit in Reply and in Opposition to Defendants Cross-Motion, at 3) who may distribute profits to themselves, and the amount of the defendants' cash balances other than collateral accounts is not greater than the sums claimed by the plaintiff, (Notice of Cross-Motion to Vacate Attachments, Exhibit E), execution of a judgment might present serious difficulty. Compare *Black Clawson Co. v. Heede Int'l*, 39 A.D.2d 863, 332 N.Y. S.2d 989 (1st Dept. 1972). The defendant has not demonstrated that attachment should be vacated on the ground that it is not needed to secure a judgment, but this does not end the inquiry.

The availability of an attachment in New York is limited to those actions in which the plaintiff, if successful, will recover a money judgment. See 7a Weinstein-Korn-Miller ¶ 6201.06 (1968). In order to prove grounds for attachment, therefore, the plaintiff must establish that at least one of the causes of action alleged in the complaint states a prima facie claim for money damages.

The plaintiff's first cause of action, arising from the letter agreement of June 6, 1975, seeks to compel the defendant to deliver shares of stock to the plaintiff. In the alternative, an accounting and money damages are requested. Since the shares of stock are being held in escrow pending the outcome of this litigation, if the plaintiff prevails on the merits than nonmonetary relief—delivery of the stock—will fully satisfy his first claim.

The plaintiff's second cause of action—to recover for services rendered—clearly seeks monetary relief. Under the terms of his agreement with the defendants, the plaintiff is entitled to compensation equivalent to one-half the salary and benefits received by Incontrade's President, provided that he spent one-half of his time working for Incontrade. According to the defendants' papers, however, the plaintiff did receive the compensation due him (Notice of Cross-Motion to Vacate Attachments, Affidavit of Frederick Gilchrest, at 3 and Exhibit H); indeed, defendants claim that this compensation was in excess of one-half of the salary and emoluments received by the President of Incontrade during the same period. The plaintiff therefore is only entitled to recover on this cause of action if he spent substantially more than one-half his time working for Incontrade. Although the plaintiff's affidavits indicate that he made several trips to Europe and Africa between June 1975 and September 1975, (Affidavit in Reply and in Opposition to Defendants' Cross-Motion, at 3–6) the complaint and affidavit do not furnish evidence whether he spent more than one-half of his time working for Incontrade. Unless the plaintiff can prove the point his second cause of action must ultimately fail.

■ The third cause of action alleged in the complaint, based on the plaintiff's assertion that he accepted a disproportionate share of the profits from a joint venture because of the defendant's agreement of June 6, 1975 to convey stock to him, appears not to state a claim. Nothing in the joint venture agreement refers to the letter agreement of June 6, which involved the conveyance of stock. (Notice of Cross-Motion to Vacate Attachments, Exhibit A) Moreover, if plaintiff satisfies his claim to the shares of stock currently held in escrow, he has no reason then to seek to increase his profits from the joint venture. This is an insufficient reed to support attachment of another's property.

In sum, the plaintiff's first cause of action states a prima facie claim, but for nonmonetary relief. The third cause of action clearly must fail. Only the second cause of action, provided plaintiff can make the necessary showing that he spent more than half his time working for Incontrade, states a prima facie claim for money damages.

■ Two additional arguments are made by the defendants to support their cross-motion to vacate the attachment. The defendants claim that the plaintiff was able to procure the attachment order by using confidential information obtained by him in the course of acting as attorney for the defendants. The attachments, the defendants assert, should be vacated since the plaintiff allegedly breached Canon 4 and Ethical Consideration 4–5 of the American Bar Association, which provide in part:

"Canon 4. A lawyer shall preserve the confidences and secrets of a client."

\* \* \* \* \* \*

EC 4–5. A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use . . . such information for his own purposes."

This Canon was never intended to prevent a lawyer from attaching the funds of his clients, even where the attachment is facilitated by confidential information possessed by the lawyer. Indeed, Disciplinary Rule 4–101(c)(4) provides:

"C. A lawyer may reveal:

\* \* \* \* \* \*

4. Confidences or secrets necessary to establish or collect his fee . . . ."

See ABA *Opinion* 250 (1943) (lawyer not prevented by Canon 4 from disclosing confidential information in order to attach client's property). If *arguendo* plaintiff is entitled to recover in this litigation, the defendants may not use the lawyer-client relationship to avoid their obligations to the plaintiff.

■ Finally, defendants contend that Section 6201(1) is unconstitutional, citing *Vath v. Israel*, 80 Misc.2d 759, 364 N.Y. S.2d 97 (Queens Co. 1975). Although that case declared Section 6201(1) unconstitutional for failing to provide an immediate post-seizure hearing, the holding specifically exempted from a hearing requirement the portion of Section 6201(1) pertaining to foreign corporations, "where different controlling factors may be involved." *Id.* 80 Misc.2d at 761, 364 N.Y.S.2d at 99. Moreover, in the present case, the defendants were granted an immediate post-seizure hearing on the order of attachment. Order, 75 Civ. 5050 (S.D.N.Y., October 14, 1975).

■ We conclude that plaintiff is entitled to maintain the attachment if, but only if, he establishes a prima facie claim for money damages on the second cause of action. This he has not done in the present state of the record. Accordingly, defendants' motion to vacate the order of attachment is granted unless within twenty days of the filing hereof plaintiff submits further affidavits which establish prima facie that he is entitled to recover money damages on the second cause of action.

It is so ordered.