Michael **FEDER** and Jeanne Feder, Executors of the Estate of Philip Feder, Deceased, Plaintiffs,

v.

**TURKISH AIRLINES,** also known as Turk Hava Yollari, A. O. (THY), Defendant.

No. 75 Civ. 6345–CSH.

United States District Court, S. D. New York.

Nov. 28, 1977.

On Motion for Certification for Interlocutory Appeal Dec. 12, 1977.

Kreindler & Kreindler, New York City, for plaintiffs; Paul S. Edelman, New York City, of counsel.

Condon & Forsyth, New York City, for defendant; Michael J. Holland, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

■ Defendant, a Turkish corporation, moves pursuant to Rule 12(b)(2), F.R.Civ.P., for an order dismissing the complaint for lack of jurisdiction. The motion raises the question whether the holding in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) precludes *quasi in rem* jurisdiction based upon plaintiffs' prior attachment of defendant's New York bank account. Answering that question in the negative, we deny the motion.

### I.

The wrongful death action underlying the instant application is brought by decedent's executors, and stems from the crash of an F–28 aircraft operated by defendant Turk Hava Yollari, A.O. ("THY") near Istanbul, Turkey on January 30, 1975. Plaintiffs are New York residents and initiated this litigation in a federal forum based upon diversity of citizenship, 28 U.S.C. § 1332.

Originally only *in personam* jurisdiction was averred, based upon defendant's "doing business" in this district within the meaning of New York C.P.L.R. § 301. A motion to dismiss for lack of jurisdiction elicited that this claim was predicated on the belief that THY employed a sales agent in the forum who may also have conducted other business here on defendant's behalf. This allegation was hotly disputed by movant, and this Court, upon consideration of all the papers then before it, held in a Memorandum and Order dated June 28, 1976 that plaintiff's showing was insufficient to support its claim that THY was present in this district. Leave was granted plaintiff, however, to supplement its submission after having taken discovery on the question of jurisdiction.

In consequence of this ruling, a set of interrogatories was served upon defendant, and an unfruitful effort made to depose an officer of THY's purported agent. The responses to plaintiffs' written questions categorically deny the existence here of any individual or organization systematically conducting business for defendant, although they do admit the maintenance of an account at the Chase Manhattan Bank, the assets of which are utilized in the out-of-state purchase of airplane replacement parts.

Just prior to the expiration of the period set for this jurisdictional discovery, plaintiffs, by order to show cause applied pursuant to C.P.L.R. § 6201(1) for an order of attachment to be served upon defendant's New York bank account. This request was granted by opinion dated September 30, 1976 and attachment order dated October 4, 1976, and THY's deposits at the Chase Manhattan Bank, amounting to approximately $100,000 were thus subjected to the Court's jurisdiction. Thereafter, defendant's counsel filed with the Clerk of the Court a bond in the amount of $100,000, and the Court on November 9, 1976 discharged the attachment.

In addition to restraining THY's bank account, plaintiffs also received an extension of their time to conduct discovery upon which personal jurisdiction might be based. Through a second set of interrogatories, plaintiffs learned that THY had executed in Turkey a freight forwarding contract with a New York corporation. No further attempt was made to bolster the initial assertion that defendant was doing business in New York, and even if this contention has not been formally abandoned by plaintiffs, we would find on the record now before us that THY has had insufficient contacts with the forum to render it personally liable for a judgment of this Court. Thus, jurisdiction over THY rests solely upon the attachment.[1]

### II.

On June 24, 1977 the Supreme Court handed down its opinion in *Shaffer v. Heit-*

---

**1.** Plaintiff intimates that since the attachment has been discharged by the posting of a bond of comparable value the issue is moot, see Affidavit of Paul S. Edelman, sworn to August 18, 1977 n. 1. Such is not the case. The plain language of C.P.L.R. § 6222 indicates that the substitution of such security for the property seized does not alter the *quasi-in-rem* nature of the proceeding.

*ner, supra*—a shareholders' derivative suit initiated in Delaware's Court of Chancery against numerous directors and officers of the Greyhound Corporation and certain of its subsidiaries, all of which are chartered under the laws of Delaware. The litigation was premised upon defendants' commission of acts of malfeasance in Oregon which resulted in the entry there of a substantial money judgment against the corporation for violation of the federal antitrust statutes and of a fine assessed there in a related action for criminal contempt.

Since personal jurisdiction could not be obtained over these individuals, the suit proceeded by the sequestration of defendants' stock in the Greyhound company which was valued at over one million dollars. Sequestration is the equity counterpart of attachment, and is effected by the placing of a "stop transfer" order on the books of the company whose stock is being seized. This procedure is possible because, under Delaware law, shares in its corporation are deemed to be present in the State regardless of the actual physical location of the certificates. Moreover, there is no limited appearance available under Delaware law (i. e. the opportunity of a non-resident to defend his seized property on the merits without subjecting himself to a judgment in excess of the value of such property), as indeed, the announced purpose of the sequestration statute is to compel non-residents to submit to the personal jurisdiction of Delaware's courts.

The defendants in *Shaffer* attacked the sequestration statute, thus applied to them, as violative of the Due Process Clause of the Fourteenth Amendment (1) because it permitted the state courts to exercise jurisdiction despite the absence of sufficient contacts among the defendants, the litigation, and the State of Delaware; and (2) because it authorized the deprivation of defendants' property without providing adequate procedural safeguards. The Dela-

ware courts perceived no Constitutional blemishes in the statute. The Supreme Court reversed on the basis of the first of these contentions.

Justice Marshall's opinion for the majority [2] extends to assertions of state court jurisdiction *in rem* those standards of *International Shoe* [3] and its progeny which govern jurisdiction *in personam*. *International Shoe* held that a nonresident defendant was subject to the forum's *in personam* jurisdiction if:

"... he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278." 326 U.S. at 316, 66 S.Ct. at 158.

The presence of such "minimum contacts" is constitutionally required, as a function of due process:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Id.* at 319, 66 S.Ct. at 160.

The *International Shoe* standard of *in personam* jurisdiction governs actions against natural persons as well as corporations, *Shaffer*, 433 U.S. at 204 n. 19, 97 S.Ct. 2569. Application of the standard:

"... will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,*

---

**2.** Justice Powell wrote a concurring opinion. Justice Stevens' opinion concurs in the result. Justice Brennan concurred in the majority's constitutional analysis, but dissented from its application to the facts of the case.

**3.** *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

These concepts are familiar enough within the *in personam* context. *Shaffer* declares new law by extending them to actions *in rem*, which previously had depended upon the forum's power over property within its territory, quite without regard to the property owner's contacts with the forum. That concept of jurisdiction *in rem* derives from *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), which declared "the ability of a resident plaintiff to satisfy a claim against a nonresident defendant by bringing into court any property of the defendant located in the plaintiff's State." *Shaffer*, 433 U.S. at 200, 97 S.Ct. at 2578. The extreme to which that concept could be carried is demonstrated by *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), in which one Epstein, a resident of Maryland, had a claim against Balk, a resident of North Carolina. Balk was not subject to jurisdiction *in personam* in Maryland. Harris, another North Carolina resident who owed Balk money, ventured into Maryland, and had his debt to Balk garnished by the alert Epstein. Harris paid Epstein, and subsequently successfully defended a suit by Balk on the debt, the Supreme Court holding:

> ". . . that Harris' payment to Epstein be treated as a discharge of his debt to Balk. This Court reasoned that the debt Harris owed Balk was an intangible form of property belonging to Balk, and that the location of that property traveled with the debtor. By obtaining personal jurisdiction over Harris, Epstein had 'arrested' his debt to Balk, 198 U.S., at 223, and brought it into the Maryland court. Under the structure established by *Pennoyer*, Epstein was then entitled to proceed against that debt to vindicate his claim against Balk, even though Balk himself was not subject to the jurisdiction of a Maryland tribunal." *Shaffer*, 433 U.S. at 200, 97 S.Ct. at 2578.

As Justice Marshall points out in *Shaffer* at 199, 97 S.Ct. at 2578, *Pennoyer* laid the foundation for such a result by conceptualizing that "the owner is affected only 'indi-rectly' by an *in rem* judgment adverse to his interest in the property subject to the court's disposition." That distinction may have eluded Mr. Balk, who could be pardoned for feeling 'directly' affected by the legal consequences of Mr. Harris's Maryland visit.

Lower courts and commentators increasingly questioned "*Pennoyer*'s premise that a proceeding 'against' property is not a proceeding against the owners of that property." *Shaffer* at 205, 97 S.Ct. at 2581. *Shaffer* addresses the question "whether the standard of fairness and substantial justice set forth in *International Shoe* should be held to govern actions *in rem* as well as *in personam*." *Id.* at 206, 97 S.Ct. at 2581; and answers that question in the affirmative:

> "We therefore conclude that all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Id.* at 212, 97 S.Ct. at 2584.

The phrase "all assertions of state court jurisdiction" is clearly intended to enhance actions *in rem* and *quasi in rem*, definitions the *Shaffer* court reiterated:

> " 'A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him. Restatement, Judgments, 5–9.' *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 2 L.Ed.2d 1283." *Id.* at 199 n. 17, 97 S.Ct. at 2577 n. 17.

Justice Marshall's opinion recognizes that application of *International Shoe* standards to *in rem* actions would affect certain of them more than others:

"It appears, therefore, that jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state court jurisdiction must satisfy the *International Shoe* standard. For the type of *quasi in rem* action typified by *Harris v. Balk* and the present case, however, accepting the proposed analysis would result in significant change. These are cases where the property which now serves as the basis for state court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus, although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum." *Id.* at 208, 97 S.Ct. at 2582.

The case at bar is one "where the property which now serves as the basis for state court jurisdiction is completely unrelated to the plaintiff's cause of action." Accordingly we must consider whether the "significant change" *Shaffer* evidently intended to bring about in this area of *quasi in rem* jurisdiction extends to the fact situation presented at bar.

### III.

Consideration of that question is aided by analysis of the actual result reached in *Shaffer.*

Applying its reasoning to the case before it, the Court held that defendants' contracts with Delaware were insufficient to warrant the sequestration there of their Greyhound stock. No defendant had ever "set foot in Delaware", *Shaffer* at 213, 97 S.Ct. 2569; nor had any act related to plaintiff's cause of action taken place in Delaware. Plaintiff argued that by managing or directing a Delaware corporation, and accepting the perquisites of such office, one has sufficiently availed oneself of the State's benefits as to make it fair and reasonable to be subjected to Delaware's jurisdiction. The Court, with Justice Brennan dissenting as to the result, rejected this theory because the sequestration was based not upon a concern for enforcing the State law of fiduciary obligation, but simply upon the presence of property within the forum. Delaware's interest in vindicating its rules of corporate management might have a bearing on the forum court's choice of laws, but could not invest its own courts with jurisdiction where defendants otherwise lacked the requisite contacts. Distinguishing the situation from those where acceptance of a directorship constitutes a consent to suit, Justice Marshall concluded that plaintiff had not demonstrated that defendants

" 'purposefully avail[ed themselves] of the privilege of conducting activities within the forum state,' *Hanson v. Denckla, supra* [357 U.S. 235] at 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283, in a way that would justify bringing them before a Delaware tribunal. Appellants have simply had nothing to do with the State of Delaware. Moreover, appellants had no reason to expect to be haled before a Delaware Court." *Shaffer* at 216, 97 S.Ct. at 2586.

On these facts, the *Shaffer* majority concluded:

"The Due Process Clause

'does not contemplate that a state may make binding a judgment . . . against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *International Shoe Co. v. Washington, supra,* [326 U.S. 310] at 319, 66 S.Ct. 154, 90 L.Ed. 95.

"Delaware's assertion of jurisdiction over appellants in this case is inconsistent with that constitutional limitation on state power." *Id.* at 216, 97 S.Ct. at 2587.

### IV.

The case at bar does not present as full a factual record as might be wished; in fact, the only relevant data is supplied by defendant's response to interrogatory # 30:

"THY does have a special account in the Chase Manhattan Bank in New York for the purchase of aircraft parts or components but no current payments are made from this account."

Thus, the circumstances surrounding the opening and operation of THY's bank account here are not revealed.

This is not an impediment to the decision reached herein, however, because a valid[4] jurisdictional attachment having already issued, it is incumbent upon the movant to set forth in suitable detail the grounds for its vacatur, *Nakasian v. Incontrade, Inc.,* 409 F.Supp. 1220 (S.D.N.Y.1976). In the absence of assertions to the contrary by defendant, it can be safely assumed that the attached account was arranged knowingly and deliberately by defendant; it is not averred that it was opened on THY's behalf by a third party such that the selection of a New York bank was, in defendant's eyes, entirely fortuitous. Moreover, there is no claim that the utilization of this local banking facility was involuntary in the sense that New York banks with their currency exchange capabilities and far-flung correspondent offices, are uniquely qualified to service foreign depositors. Indeed, such a factor, if present, may tend to support a finding of sufficient contacts with the forum, see, *e. g., Federal Dep. Ins. Corp. v. Interbanca-Banca per Finanziamento a Medio Termine, S.P.A.,* 405 F.Supp. 1118 (S.D.N.Y.1975). Thus, the presence here of THY's property cannot be conceived of as unwitting.

In these circumstances, we cannot say of THY, as the *Shaffer* Court said of those defendants, that THY "never set foot" in New York; or that THY has "simply had nothing to do" with the State of New York. THY opened a bank account in New York to facilitate the conduct of its business. Plaintiffs attached that account.

THY's position is that:

"The plain holding of the Supreme Court in *Shaffer* is that the mere presence of a bank account of a non-resident defendant in a state, where that account is unrelated to the cause of action sued on by the plaintiffs, is an insufficient basis upon which to make the non-resident defendant subject to *quasi in rem* jurisdiction." Reply brief, p. 5.

Surely no such express "holding" appears in *Shaffer,* which did not deal with a bank account voluntarily opened by a nonresident defendant within the forum. If *Shaffer* requires vacatur of this attachment, it can only be by necessary implication from the principles it declares.

On that question defendant bears a burden of persuasion which it has not carried. The implications of *Shaffer* may prove troublesome; this Court shares the sentiment of Justice Stevens, concurring in the judgment in *Shaffer* :

"How the Court's opinion may be applied in other contexts is not entirely clear to me." *Id.,* 433 U.S. at 219, 97 S.Ct. at 2588.

Justice Stevens also observes, however: "If I visit another state, or acquire real estate or open a bank account in it, I knowingly assume some risk that the state will exercise its power over my property or my person while there. My contact with the state, though minimal, gives rise to predictable risks." *Ibid.*

That passage precisely describes the position in which THY finds itself. Its contact with New York, by the opening of a bank account, "gives rise to predictable risks". The question posed by the motion, stated somewhat differently, is whether one of those risks has come home to roost. We hold that it has.

We conclude, in sum, that the present attachment does not fall within *Shaffer* or offend the Constitution. The voluntary opening by THY of a bank account in New York satisfies the "minimum contacts" of *International Shoe,* as well as that requirement of foreseeability imparted by *Shaffer*

---

**4.** The posting of a bond to discharge an attachment is generally held to constitute a concession of the validity of the attachment, *Henry Stuart (Fabrics) Ltd. v. Jules Moskowitz & Co., Inc.,* 44 A.D.2d 798, 355 N.Y.S.2d 389 (1st Dept. 1974).

into *quasi in rem* actions: the concept, that is to say, that the nonresident owner has undertaken acts with respect to the attached property[5] which placed him on notice of the possibility of his having to defend such property in the foreign forum. *Harris v. Balk, supra*, offended concepts of fairness because the presence of the nonresident owner's property in the attaching forum was, as to him, entirely fortuitous, resulting from the unforeseeable wanderings of his debtor. *Shaffer* declined to find, in the Delaware sequestration statutes, a demonstration that defendants had "purposefully avail[ed themselves] of the privilege of conducting activities within the forum State", *id.* at 216, 97 S.Ct. at 2586. The case at bar cannot be compared to either *Harris* or *Shaffer*. The attachment in this case arises neither from the unpredictable visitations of THY's debtor, nor from the statutory scheme of a state into which THY never set foot. The attachment arises from a commercial bank account which THY voluntarily opened in New York for the furtherance of its business. It is not necessary that the property attached be related to the underlying cause of action; jurisdiction *quasi in rem*, at least in the second of its two manifestations,[6] requires no such showing.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied.

It is So Ordered.

## ON MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

■ Defendant Turkish Airlines moves for amendment of this Court's prior order, so as to include a statement permitting certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons stated, the motion is denied.

The interlocutory appeals statute requires that the district court be of the opinion that the order in question "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . ." As counsel for Turkish Airlines point out, the first and third of the three elements are satisfied, since if the attachment of its bank account is vacated, there is no other basis for the Court's jurisidiction.

The decisive consideration is accordingly whether "there is substantial ground for difference of opinion" with respect to the court's refusal to vacate the attachment. The defendant's motion, which takes the form of a letter to the Court dated December 2, 1977, fails to demonstrate the presence of this element.

Defendant relies, as it did in its original motion, upon the decision last June of the Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. The position taken by Turkish Airlines in

---

**5.** Justice Marshall's majority opinion does not in express terms state that the minimal contacts *must be in respect to the attached property*. Conceivably the case could be interpreted as holding that acts unrelated either to the underlying cause of action or the seized chattels may be considered in determining the propriety of the attachment. (This is the construction which the parties herein have apparently placed upon *Shaffer*.) Numerous combinations and permutations could flow from such an analysis: for example, a nonresident's activities, relative to the cause of action might be insufficient to establish long-arm jurisdiction, but an adequate basis for an attachment of defendant's property in the forum. Or, a nonresident's activities unrelated to the litigation (and the seized property) might be too minimal for personal jurisdiction under the "doing business" rubric, but sufficient to support *quasi-in-rem* jurisdiction.

Such ambiguity is to be eschewed. It is more reasonable to construe *Shaffer* as requiring minimal contacts between the defendant and the forum relative to the property attached since that interpretation best comports with the foreseeability language of the decision: transitory contacts unrelated to the property simply would not put a nonresident defendant on notice of the possibility of his having to defend certain property in the forum. See McLaughlin, *New York Trial Practice*, N.Y.L.J., September 9, 1977 n. 2: ". . . *Shaffer v. Heitner* demands a purposeful act by the defendant in locating his property here . . ."

**6.** See pp. 1276–1277, *supra*.

the original motion was that *Shaffer* required vacatur of the attachment of its bank account if the account was unrelated to the cause of action sued on by the plaintiffs. (See prior opinion of this Court at p. 1278. *Shaffer* simply cannot be read that way, and I am unable to perceive a "substantial ground for difference of opinion" with respect to the Court's rejection of that particular contention. Turkish Airlines puts forward no alternative contention in its present motion. It is simply said, generally, that it would be "in the interests of both the parties to this action and other litigants seeking orders of attachments in the federal courts of this circuit to have the benefits of the views of the Second Circuit Court of Appeals as to the extent of the application of the *Shaffer v. Heitner* case in this circuit." Perhaps so, but in order to ask the Court of Appeals to express those views through the medium of an interlocutory appeal, there must be more substance to the contentions which the district court rejected than I perceive in the case at bar.

Once again, I find guidance in the concurring opinion of Mr. Justice Stevens in *Shaffer.* In an obvious reference to the sort of situation presented by the case at bar, Mr. Justice Stevens stated:

> "The requirement of fair notice also, I believe, includes fair warning that a particular activity may subject a person to the jurisidiction of a foreign sovereign. If I visit another state, or acquire real estate or open a bank account in it, I knowingly assume some risk that the state will exercise its power over my property or my person while there. My contact with the state, though minimal, gives rise to predictable risks."

He then discussed the stock ownership and statutory background which was presented to the Court in *Shaffer.* Having done so, and concurred with the judgment of the Court, Mr. Justice Stevens added:

> "How the Court's opinion may be applied in other contexts is not entirely clear to me. I agree with Mr. Justice Powell that it should not be read to invalidate in rem jurisdiction where real estate is involved. *I would also not read it as invalidating other long accepted methods of acquiring jurisidiction over persons with adequate notice of both the particular controversy and also that their local activities might subject them to suit.* My uncertainty as to the reach of the opinion, and my fear that it purports to decide a great deal more than is necessary to dispose of this case, persuade me merely to concur in the judgment." At 219, 97 S.Ct. at 2588 (emphasis added).

Mr. Justice Stevens appears to be saying that, whatever other uncertainties might arise, he entertained no doubt that the majority opinion in *Shaffer* would not be applied to the fact situation at bar. I respectfully agree with that evaluation, and perceive nothing in the majority opinion indicating a contrary view.

The record on the present motion compelled the assumption that the defendant voluntarily opened a bank account in New York, in aid of its conduct of business (see prior opinion at pp. 1277–1278. For the reasons stated in that prior opinion, I conclude that *Shaffer* does not apply to an attachment of such a bank account; and I am not in good conscience able to certify to the Court of Appeals that, in my judgment, there is "substantial ground for difference of opinion" as to that view.

The requested certification is denied.

It is So Ordered.