**CAMECO INDUSTRIES, INC.**

v.

**MAYATRAC, S.A.**

**Civ. No. JFM–91–2323.**

United States District Court,
D. Maryland.

April 1, 1992.

James W. Bartlett, III, J. Marks Moore, III, Maura Schecter, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, Md., for plaintiff.

William Hylton, Jr., and Andrew Baida, Asst. Atty. Gen., Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

This action has been brought by Cameco Industries, Inc., a Louisiana corporation, against Mayatrac, S.A., a Guatemalan corporation. On August 19, 1991, I entered an order authorizing the attachment of a bank account maintained by Mayatrac at the First National Bank of Maryland. Mayatrac has moved to dissolve the attachment and dismiss the action. Because the motion raises the question of the constitutionality of Maryland's prejudgment attachment procedure, I have invited the Attorney General of Maryland to intervene pursuant to 28 U.S.C. § 2403(b).

### I.

Cameco is a manufacturer of sugar cane machinery, equipment and parts. In 1978 Mayatrac became a dealer for Cameco in Guatemala. It served in that capacity until December 10, 1990, when Cameco terminated the dealership agreement.

On January 30, 1991, Mayatrac filed a suit against Cameco in Guatemala under a Guatemalan statute which provides a damages remedy in favor of a unilaterally terminated dealer.[1] Seven months later Cameco filed suit against Mayatrac in Louisiana, asserting that Mayatrac owes it approximately $377,000 on account. On August 19, 1991, Cameco filed this suit for the sole purpose, as alleged in the complaint, "of obtaining a writ of attachment of garnishment in order to attach property of Mayatrac."[2] As stated above, on August 19, 1991, I entered an order authorizing the issuance of a writ of attachment against a bank account maintained by Mayatrac at the First National Bank. That bank account was opened by Mayatrac in May 1978, and has been used generally in connection with the transaction of Mayatrac's business in the United States. At least three checks drawn on the account have been used to pay for monies due Cameco from Mayatrac under their dealership agreement.

On August 20, 1991, when the writ of attachment was served upon First National, there was a balance of $190,431.96 in Mayatrac's account. Mayatrac now seeks release of those funds on the grounds that (1) as a matter of Maryland law, the writ has expired, (2) Mayatrac lacks sufficient contacts with Maryland to justify assertion of quasi in rem jurisdiction over its account at First National and (3) the Maryland prejudgment attachment procedure violates the due process clause of the Fourteenth Amendment.

### II.

■ Maryland Rule 2–115 sets out the procedure for obtaining a prejudgment attachment. Subsection (f) of the rule provides as follows:

An attachment made before service of original process dissolves 60 days after making the levy or serving the garnishee unless before that time the summons is served upon the defendant or first publication is made pursuant to Rule 2–122, provided that publication is subsequently

1. Mayatrac has invoked the letters rogatory process in the Guatemalan suit but service on Cameco has not yet been completed.

2. Cameco has filed a similar action against Mayatrac in Florida, seeking to attach certain assets owned by Mayatrac there.

completed. Upon request made within the initial 60 day period, the court for good cause may extend the attachment for not more than 60 additional days to permit service to be made or publication commenced pursuant to this section.

Cameco served the attachment on First National Bank on August 20, 1991. It served process on Mayatrac by certified mail on September 18, 1991. However, that service was technically defective, and personal service has not yet been effectively made upon Mayatrac. On October 21, 1991 Cameco sought an extension of the attachment until December 20, 1991, and on October 24th the extension was granted. Mayatrac filed a motion to dissolve the attachment on December 18, 1991. On December 19, 1991, Cameco filed a motion for order of publication and that motion was granted on December 20th.

Mayatrac argues that under Rule 2-115(f) the attachment could continue in effect for only 120 days (the original 60 day period and one additional 60 day period) unless within that period service was effected upon Mayatrac or publication had commenced. According to Mayatrac, this 120 day period expired on December 18, 1991—one day before Cameco filed its motion for an order of publication and two days before I granted that motion.[3]

The fallacy in Mayatrac's contention is that Rule 2-115(e) requires that publication be made only if the defendant is not served and if he "does not voluntarily appear." I am fully satisfied that Mayatrac's filing of a motion to dissolve the attachment on December 18th constituted a "voluntary appearance" within the meaning of this rule. The obvious purpose of the provisions here in question is to assure that the defendant is given notice of the attachment so that he can promptly challenge the seizure of his property. Self-evidently, this purpose is fulfilled when a defendant, having been given actual notice of the attachment, in fact files a motion to dissolve it. To require a plaintiff under such circumstances to take the additional step of publishing notice of the proceeding would elevate form over substance.

## III.

The next issue presented is whether quasi in rem jurisdiction may be constitutionally asserted over Mayatrac's bank account in Maryland. Analysis of that issue must begin with *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), where the Supreme Court extended the "minimum contacts" doctrine of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), to cases involving quasi in rem jurisdiction.

If the Supreme Court intended to hold in *Shaffer* that the same minimum contacts necessary to assert personal jurisdiction over a defendant must also exist in order to sustain the assertion of quasi in rem jurisdiction over property owned by the defendant, quasi in rem jurisdiction may not be exercised over Mayatrac's bank account in this case. Cameco has cited no case in which a defendant has been held subject to in personam jurisdiction in the forum state merely because it maintained a bank account there. That act alone clearly is insufficient to confer "general jurisdiction" and "specific jurisdiction" cannot be said to exist unless the underlying dispute concerns a transaction involving the bank account itself. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–418, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984).

---

**3.** The reason that Cameco did not act until December 19, 1991 is that October 19, 1991—the day on which the initial 60 day period expired—was a Saturday and Maryland Rule 1-203(a) authorized it to wait until the following Monday (October 21, 1991) to file its motion to extend the attachment for an additional 60 days. Cameco argues that reading Rules 2-115(f) and Rule 1-203(a) together, it had until December 20th, not December 18th to obtain the order of publication. I need not decide this issue since I find that Mayatrac's filing of a motion to dissolve the attachment on December 18th is dispositive. For the same reason I also need not decide an alternative argument made by Mayatrac that assuming that the 120 day period expired on December 20, 1991, the requirement of Rule 2-115(f) that publication be "commenced" within 120 days was not met by the entry of the order of publication but could only be satisfied by the actual publication of the notice (which did not occur until after December 20th).

I do not, however, read *Shaffer* as requiring the same minimum contacts for the exercise of quasi in rem jurisdiction as are required for the assertion of in personam jurisdiction. Of course, if a defendant's contacts with the forum are sufficient to exercise jurisdiction over his person, it follows a fortiori that the contacts are sufficient to justify the exercise of quasi in rem jurisdiction over his property within the forum. But the converse is not necessarily true. The fundamental principle for which *International Shoe* stands is that the assertion of jurisdiction must "not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. In my judgment that is the principle which the Supreme Court in *Shaffer* intended to extend to quasi in rem jurisdiction, and that principle does not compel the conclusion that the propriety of in personam jurisdiction and quasi in rem jurisdiction be determined by exactly the same contacts. It is one thing to say that merely maintaining a bank account in the forum should not subject a defendant to a personal judgment of a potentially limitless amount; it is quite another to say that the maintenance of that account should never by itself subject the defendant to a judgment to an amount limited to the monies which he has purposely deposited in the forum.

*Shaffer* was intended to prevent the assertion of quasi in rem jurisdiction in cases where the presence in the forum of the property providing the basis for jurisdiction was entirely fortuitous. *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), cited by the Court in *Shaffer*, 433 U.S. at 208–09, 97 S.Ct. at 2582, epitomizes the type of decision which the Court overruled. The facts of that case were succinctly described in *Feder v. Turkish Airlines*, 441 F.Supp. 1273, 1276 (S.D.N.Y. 1977) [4];

[O]ne Epstein, a resident of Maryland, had a claim against Balk, a resident of North Carolina. Balk was not subject to jurisdiction in personam in Maryland. Harris, another North Carolina resident who owed Balk money, ventured into Maryland, and had his debt to Balk garnished by the alert Epstein. Harris paid Epstein, and subsequently successfully defended a suit by Balk on the debt.

This obviously unfair result was based upon the most legalistic reasoning. Balk's property, i.e. the debt owed him by Harris, was deemed to be present in Maryland when Harris visited the state. That fact alone was held to be sufficient to confer quasi in rem jurisdiction in the Maryland courts despite the absence of any purposeful contact whatsoever between Balk and Maryland. Therefore, the Court ruled that the determination made in the Maryland action on Epstein's claim against Balk had to be honored under the full faith and credit clause of the Constitution in the subsequent action which Balk instituted against Harris in North Carolina.

The present case is quite different. Here, for over fourteen years Mayatrac purposely maintained a bank account in Maryland. It used that account to implement its business transactions in the United States, including transactions under the dealership agreement with Cameco. As stated above, these facts are not sufficient to subject Mayatrac to personal jurisdiction in Maryland under either a general or specific jurisdiction theory. However, Mayatrac's maintenance of the account was not at all fortuitous; it was voluntary, purposeful and directly related to its general business operations. Therefore, it "does not offend 'traditional motions of fair play and substantial justice'" to hold that Mayatrac has subjected the monies in the account to quasi in rem jurisdiction in Maryland. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–80, 105 S.Ct. 2174, 2184–86, 85

---

**4.** *Feder* is similar to the present case and supports the conclusion which I reach. There, in a wrongful death action arising from an airplane crash near Istanbul, the Southern District of New York exercised *quasi in rem* jurisdiction over a bank account maintained by Turkish Airlines in New York. Indeed, the issue in *Feder* was somewhat murkier than the one presented here since the New York bank account was utilized for the limited purpose of purchasing airplane replacement parts, not for the airline's general business purposes.

L.Ed.2d 528 (1985); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223–24, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1958).[5]

## IV.

Having decided that Cameco complied with the technical requirements of Maryland Rule 2–115 and that quasi in rem jurisdiction may constitutionally be asserted over Mayatrac's bank account located in Maryland, I must consider the constitutionality of Maryland's prejudgment attachment procedure.

## A.

■ A person's property may be seized without an opportunity for a prior hearing only if "the seizure has been directly necessary to secure an important governmental or general public interest" and if "there has been a special need for very prompt action." *Fuentes v. Shevin*, 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). Mayatrac contends that neither of these conditions exist here. It argues first that the outcome of the dispute between Cameco and Mayatrac, two non-residents of Maryland, is not a matter of any concern to Marylanders and that therefore the seizure of Mayatrac's bank account is not justified by any governmental or public interest of the state. This argument is too narrow in focus. It ignores the interest of comity which all fifty states of the union share. If the seizure of Mayatrac's bank account is otherwise lawful, Maryland may properly authorize the seizure as an accommodation to her sister state, Louisiana, where Cameco is headquartered and where Mayatrac allegedly is subject to personal jurisdiction. By granting that accommodation Maryland may legitimately expect that Louisiana (and other states) will reciprocate by authorizing seizures in similar cases where the interests of Maryland citizens are directly involved.

■ Mayatrac's second contention—that there is no "special need for very prompt action"—is, however, entirely persuasive as a factual matter. The record is devoid of any evidence suggesting that Mayatrac maintained its bank account in Maryland to conceal its assets or that it was removing its assets from Louisiana to Maryland. To the contrary, as Cameco itself emphasizes, Mayatrac maintained the account in Maryland for over fourteen years.

■ Of course, the bank account is a liquid asset which Mayatrac could easily remove from the United States during the pendency of the suit which Cameco has instituted against Mayatrac in Louisiana. *See Carolina Power & Light Co. v. Uranex*, 451 F.Supp. at 1048–49 (justifying the exercise of quasi in rem jurisdiction in part upon the liquidity of the seized asset, an account receivable due to the defendant). However, this fact alone does not warrant prejudgment seizure of the asset, let alone seizure without the opportunity for hearing. If Cameco was concerned about assuring payment for the goods which Mayatrac purchased under the dealership agreement, it could have required that Mayatrac provide a letter of credit or other form of security. Moreover, if that security was property located in Maryland, Cameco could have obtained an order to seize it. Utilization of the prejudgment attachment process is entirely appropriate to implement the reasonable commercial expectations of the parties and to prevent a creditor from resorting to self-help. *See*

---

**5.** Cameco also argues that since it has attached Mayatrac's bank account for the purpose of ultimately collecting on a judgment which it intends to obtain against Mayatrac in Louisiana (with which Mayatrac has more substantial contacts), this case falls within the so-called "security" exception to the *Shaffer* rule. In *Shaffer* the Supreme Court suggested that there might be circumstances under which a plaintiff could attach property located in one state "as security for a judgment being sought in a forum where the litigation can be maintained consistently

with *International Shoe*." 433 U.S. at 210, 97 S.Ct. at 2583. Other courts have found this exception to exist, *see, e.g., Barclays Bank, S.A. v. Tsakos*, 543 A.2d 802 (D.C.App.1988); *Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044, 1048 (N.D.Cal.1977), and I agree with them in principle. However, the exception applies only where a defendant has attempted to conceal his assets or remove them from the jurisdiction where he is subject to personal jurisdiction. No allegation is made here that Mayatrac has engaged in such conduct.

*Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 606–10, 94 S.Ct. 1895, 1899–1901, 40 L.Ed.2d 406 (1974). However, that does not mean that the prejudgment attachment process may be used as an independent means of security for a creditor who did not sufficiently protect its own interests when it entered into a contract. That is what Cameco seeks to do here, and the use of the Maryland prejudgment attachment process to achieve that end is therefore unconstitutional.[6]

For these reasons the attachment which I issued on August 19, 1991 will be dissolved and this action will be dismissed. A separate order to that effect is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 1st day of April 1992

ORDERED

1. The State of Maryland's motion to intervene is granted;

2. Defendant's motion to dissolve the attachment is granted and the attachment is hereby dissolved; and

3. This action is dismissed for lack of jurisdiction.

---

**6.** There is another ground on which the constitutionality of Maryland's prejudgment attachment procedure is subject to serious question. It is now well established that, at least where more than the mere "existence of a debt or delinquent payment" is involved, a defendant whose property has been seized must be given the opportunity for a prompt post-deprivation hearing on the issue of the plaintiff's probable success on the merits. *See Connecticut v. Dohr*, — U.S. —, 111 S.Ct. 2105, 2114, 115 L.Ed.2d 1 (1991); *United States Gen., Inc. v. Arndt*, 417 F.Supp. 1300, 1313 (E.D.Wis.1976). Neither the Maryland Code nor the Maryland Rules expressly provide for such a hearing. The State has attempted to fill this void by pointing to a clause buried in Maryland Rule 2–115(g) which states: "[u]pon motion of a defendant or garnishee, the court ... may dissolve the attachment on the ground that the plaintiff is not entitled to attachment before judgment." It is true, as the State asserts, that "where one admissible construction will preserve a statute from constitutionality and another will condemn it, the former is favored." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 134, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974). However, the clause here in question is, at best, misleading and ambiguous. The most reasonable and fair construction would seem to be that a defendant may challenge an attachment on the ground that the attachment was not authorized by Md.Cts. & Jud.Proc.Code Ann. §§ 3–301 to 3–305. Apparently, Cameco itself never read the rule as requiring a hearing on the probability of success because it never sought to uphold the constitutionality of the rule on that basis. Because of the uncertainty of the matter, the Maryland Rules Committee might wish to consider whether a provision should be added to Rule 2–115 expressly granting the right to a post-seizure hearing on the probability of success issue.