ENGINEERING EQUIPMENT COMPANY, the W. Clasmann Corporation, Pullman Incorporated and Tel-E-Lect, Inc., Plaintiffs,

v.

S.S. SELENE, her engines, boilers, etc., and the S.S. ANDREA GRITTI, her engines, boilers, etc.

ENGINEERING EQUIPMENT COMPANY, Plaintiff,

v.

WATERSIDE OCEAN NAVIGATION CO., INC., Holt Cargo Systems, Holt Marine Terminal and Warehouse Systems, Holt Systems, Inc., Holt Hauling and Warehousing System Inc., Kirno Hill Corporation and Societe Italiana di Armanento, Defendants.

77 Civ. 211 (LFM).

United States District Court, S. D. New York.

March 14, 1978.

Vincent, Berg, Russo, Marcigliano & Zawacki by Alfred J. Will, New York City, for plaintiffs.

Shedd Moraites & Rathe by Thomas H. Seiler, New York City, for defendants Waterside Ocean Navigation Co., Inc., Holt Cargo Systems, Holt Marine Terminal, Inc., Holt Systems Inc., and Holt Hauling and Warehousing System, Inc.

## OPINION

MacMAHON, District Judge.

Plaintiffs move for leave to file and serve a verified amended complaint pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B(1)"). The amended complaint would seek to attach the property of certain foreign defendants in order to obtain jurisdiction quasi in rem. Plaintiff, Tel-E-Lect, Inc. ("Tel-E-Lect"), also moves for leave to amend the complaint pursuant to Rule 15(a), Fed.R.Civ.P.

This is a suit in admiralty for misdelivery of, and damage to, cargo shipped from the port of Philadelphia aboard the S.S. "SELENE" and the S.S. "ANDREA GRITTI." The vessels are owned by defendants Kirno Hill Corp. ("Kirno"), a corporation organized under the laws of Monaco, and Societe Italiana di Armanento ("Sidarma"), a corporation organized under the laws of Italy. The other defendants (collectively, the "Holt defendants") served as agents for the masters of the vessels, issued the bills of lading, and, pursuant to charter parties with the vessel owners, acted as the carriers of the goods.[1]

The Holt defendants have been served with process and have waived any objections to jurisdiction in personam. See Rule 12(h)(1), Fed.R.Civ.P. Kirno and Sidarma have not been served and have not appeared. In separate actions pending in this district, however, Kirno and Sidarma, as plaintiffs, have sued various Holt defendants for charter hire due the vessel owners for the very voyage out of which plaintiffs' claims arise.[2] Pursuant to Rule B(1), plaintiffs now seek to obtain jurisdiction quasi in rem by attaching the obligations of the Holt defendants to pay charter hire to Kirno and Sidarma.

In pertinent part, Rule B(1) provides: "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district."

The defendants concede that neither Kirno nor Sidarma can be "found within the district." They further concede, as they must, that the Holt defendants' obligations to pay charter hire are attachable debts[3] within the meaning of Rule B(1).[4] Although the defendants do suggest that the debts have no local situs, this contention is without merit. Since the Holt defendants (the garnishees) are subject to our in per-

---

1. The complaint does not specify the precise roles of the various Holt companies, nor does it set forth any theory upon which plaintiffs will seek to hold each liable. Presumably, plaintiffs will attempt to disregard the separate corporate identities of the Holt companies. At this juncture, we express no view on these matters.

2. *Kirno Hill Corp. v. Thomas J. Holt,* 76 Civ. 403 (DBB); *Societe Italiana di Armanento v. Holt Marine Industries, Inc.,* 75 Civ. 6265 (RJW).

3. We used the term "debt" to encompass the statutory phrase "credits and effects." See *Robinson v. Shearer & Sons, Inc.,* 429 F.2d 83, 85 n.2 (3d Cir. 1970).

4. See *Iran Express Lines v. Sumatrop, AG,* 563 F.2d 648, 650 (4th Cir. 1977) (debt attachable where it arises out of executed contract); *Robinson v. Shearer & Sons, Inc., supra,* 429 F.2d at 85 (same where debt sufficient to support present action for its enforcement).

sonam jurisdiction, the debts are deemed to have their situs within the district.[5] Thus, there is no doubt that the requirements of Rule B(1) have been satisfied in this case.[6]

Raising a constitutional question of first impression, however, the defendants further contend that Rule B(1) is unconstitutional as applied, in light of the recent decision in *Shaffer v. Heitner.*[7] *Shaffer*, of course, broke with precedent to require that "all assertions of . . . jurisdiction . . . be evaluated according to the ["minimum contracts"] standards set forth in *International Shoe* and its progeny."[8] It is the defendants' contention that their lack of contacts with the forum state precludes our assertion of jurisdiction and renders Rule B(1) unconstitutional as applied. We disagree.

■ Our jurisdiction in this admiralty case does not depend upon the application of any state law. On the contrary, Rule B(1) grants us power to render a judgment binding on the parties to the extent of the value of the attached property.[9] The constitutionality of this act of Congress must be tested under the standards of the due process clause of the Fifth Amendment, not those of the Fourteenth Amendment.[10] The defendants' contacts with the forum state are quite beside the point under the Fifth Amendment.[11] The relevant constitutional inquiry under the Fifth Amendment is whether the defendants have minimum contacts with the United States as a whole sufficient to make our assertion of jurisdiction fair and reasonable under the circumstances.[12]

■ There can be no doubt that the contacts between the defendants, their property and the United States are sufficient to

---

**5.** *Morris Plan Industrial Bank v. Gunning,* 295 N.Y. 324, 329–30, 67 N.E.2d 510, 512 (1946); *Buy Fabrics, Inc. v. Ada Co.,* 76 Misc.2d 607, 609, 351 N.Y.S.2d 522, 524 (Sup.Ct.1973). Under Rule B(1), the situs of a debt is determined according to federal law. As a matter of federal law, however, we defer to the law of the forum state on this question. *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.,* 341 F.Supp. 50, 52 (2d Cir. 1965).

**6.** *Cf. Monteiro v. Sociedad Mar. San Nicolas, S.A.,* 155 F.Supp. 382, 383 (S.D.N.Y.1957) (by implication).

**7.** 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

**8.** 97 S.Ct. at 2584–85. See *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**9.** *East Asiatic Co. v. Indomar, Ltd.,* 422 F.Supp. 1335, 1341 (S.D.N.Y.1976).

Although the jurisdiction achieved through maritime attachment is sometimes denominated in personam, there is no doubt that any judgment rendered is quasi in rem in nature and is limited to the value of the attached property. See *East Asiatic Co. v. Indomar, Ltd., supra,* 422 F.Supp. at 1341–42. We, therefore, prefer the term quasi in rem to describe the jurisdiction plaintiffs seek to effect. *Cf. Maryland Tuna Corp. v. MS Benares,* 429 F.2d 307, 311 (2d Cir. 1970).

**10.** *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir. 1974); *Driver v. Helms,* 74 F.R.D. 382, 390–91 (D.R.I.1977).

**11.** *Mariash v. Morrill, supra,* 496 F.2d at 1143.

It bears repeating that this is not a case in which a federal court sitting in admiralty attempts to base in personam or quasi in rem jurisdiction upon state law. In such a case, the Fourteenth Amendment would indeed be implicated, and the question of the defendants' contacts with the forum state would arise. See, e. g., *Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205 (2d Cir. 1970). We express no opinion on *Shaffer's* impact on such a case. *Cf. Feder v. Turkish Airlines,* 441 F.Supp. 1273 (S.D.N.Y.1977); *Torres v. Towmotor Div. of Caterpillar, Inc.* (E.D.N.Y.1977).

**12.** *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416 n.7 (9th Cir. 1977); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir. 1975); *Holt v. Klosters Rederi A/S,* 355 F.Supp. 354, 357 n.2 (W.D. Mich.1973) (citing cases).

Since we deal here with the constitutionality of a federal jurisdictional statute, we need not reach the broader question whether the defendants' contacts with the United States should prevail as the jurisdictional standard in all federal question litigation, even where there is no federal legislation conferring jurisdiction. This question remains open in this circuit. See *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 228 n.9 (2d Cir. 1963); *Aquascutum of London, Inc. v. S.S. American Champion, supra,* 426 F.2d at 211 n.4; *Koupetoris v. Konkar Intrepid Corp.,* 535 F.2d 1392, 1395 n.13 (2d Cir. 1976).

permit us to assume jurisdiction.[13] The defendants' vessels sailed into the port of Philadelphia in order to take on and carry plaintiffs' cargoes. This was a purposeful act designed to further the defendants' business interests in the United States.[14] This single act is itself a constitutionally sufficient basis for jurisdiction, at least where, as here, the plaintiffs' claims for cargo damage and misdelivery arise out of that act.[15]

Moreover, even after *Shaffer,* the presence of defendants' property can provide a basis for jurisdiction.[16] Here, the presence of the debt in the United States is by no means fortuitous. The debt arises out of charter parties which the defendants executed with American companies and which contemplated at least partial performance within the United States. The defendants could reasonably have foreseen that litigation relating to the contracts and hire obligations could take place in the United States.[17] Indeed, the defendants themselves invoked this court's jurisdiction as plaintiffs in their attempts to recover the charter hire. In these circumstances, it is not unreasonable for us to assume jurisdiction to affect interests in the debt.[18]

We conclude, therefore, that the contacts between defendants, their property and the United States are sufficient to sustain jurisdiction quasi in rem through the means of a maritime attachment under Rule B(1). This case is but a further illustration of the principle that an alien defendant can rarely prefer one district over another.[19] In any event, such a preference will seldom rise to the level of a constitutional objection to jurisdiction and is more properly vindicated by a transfer pursuant to 28 U.S.C. § 1404(a), rather than by a dismissal for want of jurisdiction. Plaintiffs' motion for leave to file and serve a verified amended complaint is therefore granted.

Plaintiff Tel-E-Lect also moves for leave to amend the complaint to increase the ad damnum. Rule 15(a), Fed.R.Civ.P. Tel-E-Lect, a shipper of certain of the damaged goods, has been sued by its Iranian consignee and now seeks to assert a claim for indemnity for any judgment it may suffer at the hands of the consignee.

In opposition, the defendants note that the statute of limitations has run on plaintiffs' claims for cargo damage, see the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6), and suggest that Tel-E-Lect's additional claim is time-barred. It is well settled, however, that a claim for indemnity accrues not when the damage to the cargo occurs, but only when the indemnitee, here, Tel-E-Lect, has suffered and paid a judgment against it.[20] Since Tel-E-Lect has yet to suffer or pay any judgment, its claim for indemnity is not time-barred, and its motion to amend the complaint to increase the ad damnum must be granted.

Accordingly, plaintiffs' motions are granted in all respects. Plaintiffs are directed to file and serve a verified amended

---

13. See *Shaffer v. Heitner, supra,* 97 S.Ct. at 2580, 2582.

14. See *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir. 1972).

15. *Gkiafis v. Steamship Yiosonas,* 342 F.2d 546, 555–58 (4th Cir. 1965); *Mitsubishi Shoji Kaisha Ltd. v. MS Galini,* 323 F.Supp. 79, 82 (S.D.Tex. 1971).

16. *Feder v. .Turkish Airlines, supra,* 441 F.Supp. at 1277–79 & n.5; Comment, *Quasi In Rem On The Heels of Shaffer v. Heitner,* 46 Ford.L.Rev. 459, 462, 482 (1977).

17. See *Shaffer v. Heitner, supra,* 97 S.Ct. at 2586 & 2587 (Stevens, J., concurring); *Feder v. Turkish Airlines, supra,* 441 F.Supp. at 1277–79. Compare *Katz v. Umansky,* 399 N.Y.S.2d 412, 416 (Sup.Ct.1977); *Kennedy v. Deroker,* 91 Misc.2d 648, 650, 398 N.Y.S.2d 628, 630 (Sup.Ct.1977).

18. See Smit, *The Enduring Utility of In Rem Rules,* 43 Brooklyn L.Rev. 600, 603–04 (1977).

19. *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287, 292 (D.Conn.1975); *cf.* 28 U.S.C. § 1391(d).

20. *Prudential Lines, Inc. v. General Tire Int'l Co.,* 440 F.Supp. 556, 558 & n.3 (S.D.N.Y.1977) (citing cases).

complaint within twenty (20) days, and plaintiff Tel-E-Lect is directed to amend its complaint to increase the ad damnum within twenty (20) days.

So ordered.