EXCEL SHIPPING CORP., Plaintiff,

v.

SEATRAIN INTERNATIONAL S.A., Sotecan Container Service and Seatrain Bunker Hill, Defendants.

ADIDAS (CANADA) LIMITED and J.G. Durand International, Plaintiffs,

v.

S.S. SEATRAIN BUNKER HILL, her engines, boilers, etc., Seatrain International S.A., Seatrain Lines, Inc. and Cie, Maritime Des Chargeurs Reunis (C.M.C.R.), Defendants.

No. 83 Civ. 1735 and Related Cases.*

United States District Court, E.D. New York.

April 13, 1984.

---

\* 83 Civ. 1736, 1737, 1738, 1740, 1741, 1743, 1745, 1748, 1749, 1750, 1751 and 1752.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiffs Adidas (Canada) Ltd., J.G. Durand Intern. Ste. Canadienne Des Pneus Michelin Lttee and N.H. Ins. Co.

Bigham, Englar, Jones & Houston, New York City, for plaintiffs Hugin Cash Registers Inc., et al.

Harold Richman, Garden City, N.Y., for plaintiff Excel Shipping Corp.

Vincent, Berg, Russo, Marcigliano & Zawacki, New York City, for plaintiffs Amer-Yhtmyr Oy Koho and Talbot, Birt & Co., Inc., et al.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for plaintiffs Cycles Peugeot USA, Inc. and Elliott & Hutchins, Inc.

Hill, Betts & Nash, New York City, for defendants Seatrain Lines, Inc., Seatrain Intern. S.A.

Freehill, Hogan & Mahar, New York City, for defendant Compagnie Maritime Des Chargeurs Reunis.

Harold M. Kingsley, New York City, for Ins. Co. of North America.

McHugh, Leonard & O'Conor, New York City, for Polarome Mfg. Co., Inc. and Bausch & Lomb, Inc.

Cichanowicz & Callan, New York City, for defendant Sotecan Container Service.

Haight, Gardner, Poor & Havens, New York City, for S.A.F.E. de Numaticos Michelin, Michelin, S.A.

GLASSER, District Judge:

This consolidated action arises out of damages sustained by the S/T Bunker Hill and its cargo while the vessel was en route from LeHavre, France to the Port of New York in March 1980. Three motions are presently before the Court: (1) S.A.F.E. de Numaticos Michelin ("Michelin Spain"), which shipped the tires that allegedly caused the damage, and which is named as both defendant and third-party defendant in the consolidated action, seeks to dismiss the claims against it for lack of jurisdiction or, in the alternative on grounds of forum non conveniens; (2) Compagnie Maritime des Chargeurs Reunis ("C.M.C.R."), the owner of the vessel, named as defendant or third-party defendant in the various suits, seeks to dismiss the in personam suits against it. C.M.C.R. also seeks to dismiss the in rem actions against the vessel in several of the suits in which the plaintiffs have failed thus far to attach the vessel; (3) Plaintiff Michelin Canada, the intended recipient of the tires shipped by Michelin Spain, moves either to dismiss, pursuant to Rule 12(b)(6), or for summary judgment, pursuant to Rule 56, on the counterclaim of C.M.C.R., in which C.M.C.R. alleges responsibility on the part of Michelin Canada for the damages sustained by the vessel. For the reasons set forth in this opinion, Michelin Spain's motion to dismiss is denied; C.M.C.R.'s motion to dismiss is granted only as to the in rem actions; and Michelin Canada's motion for summary judgment is granted.

I. *Background*

The plaintiffs initially brought individual suits in the United States District Court for the Southern District of New York against C.M.C.R. and the vessel's time charterer, Seatrain International S.A. Plaintiffs asserted in personam jurisdiction over C.M.C.R., a French corporation, and Seatrain, a foreign corporation having an office in New York, and in rem jurisdiction over the vessel.

After the actions were consolidated, C.M.C.R. filed a third-party complaint against

Michelin Spain, a Spanish corporation, alleging that the plaintiffs' losses were caused by Michelin Spain's negligent stowage and securing of 77 "giant off-the-road tires" within ocean containers carried aboard the vessel and destined for Canada. Michelin Spain was allegedly responsible for loading, stowing, securing and sealing of the tires into eight ocean containers, following their sale on consignment to Michelin Canada some time between December 1979 and February 1980. The tires were packed in containers at Michelin Spain's factory in Bilbao, Spain, loaded aboard a vessel known as the Atlantic Count for shipment to Le Havre, France, and then off-loaded and stowed aboard the Bunker Hill for the voyage to Montreal via New York, with earlier stops at Rotterdam and Bremerhaven. During the Bunker Hill's voyage, the tires allegedly became unsecured in one or more of the containers, which, in turn, caused other cargo aboard the vessel to become unsecured. As a result, cargo belonging to plaintiffs was allegedly lost or damaged, and the Bunker Hill was allegedly damaged as well.

On July 2, 1982, Judge Knapp dismissed C.M.C.R.'s third-party complaint against Michelin Spain for lack of in personam jurisdiction based upon his finding that Michelin Spain was not "doing business" in New York State as required by § 301 of the New York Civil Practice Law and Rules (N.Y.C.P.L.R.).[1] Seatrain International then filed a third-party complaint against Michelin Spain, and moved, pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Fed.R.Civ.P.,[2] to attach certain debts owed to Michelin Spain by Michelin Tire Corporation (MTC), a New York corporation. These debts result from MTC's ongoing purchase of tires from Michelin Spain. Because the situs of the debts attached was in the Eastern District of New York, the plaintiffs moved to transfer the entire case to this District. The parties then filed the three motions now before this Court.

## II. *Michelin Spain's Motion to Dismiss*

### A. *Jurisdictional Grounds*

Michelin Spain argues the ineffectiveness of the attachment of the debts as a jurisdictional predicate as follows: First, it contends that, in light of the Supreme Court's application of due process considerations to quasi-in rem attachments, *see Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), a Rule B(1) attachment would only be constitutional upon a showing of sufficient relevant contacts between the defendant and the forum. Secondly, Michelin Spain contends that its contacts with this forum are insufficient to meet the requirements set forth in *Shaffer*. Because I find that in the present case Michelin Spain has sufficient contacts with this forum to satisfy the *Shaffer* requirements, there is no need to resolve the controversial

**1.** Judge Knapp's opinion rejected CMCR's contention that Michelin Spain was "doing business" in New York by virtue of its relationship with MTC. This relationship was found to be more akin to a seller/buyer than a parent/subsidiary relationship. Therefore, service of process on MTC could hardly suffice as a basis for subjecting Michelin Spain to the court's in personam jurisdiction. *See Adidas (Canada) Ltd. v. S.S. Seatrain Bunker Hill,* 80 Civ. 4499 (S.D.N.Y. July 2, 1982).

**2.** Supplemental Rule B(1) provides in relevant part as follows:

Rule B. Attachment and Garnishment: Special Provisions:
(1) When Available; Complaint, Affidavit and Process. With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or

credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies so invoked.

issue of whether *Shaffer* contacts are required to sustain jurisdiction under Rule B(1). *Compare Engineering Equipment Co. v. S.S. Selene,* 446 F.Supp. 706 (S.D.N.Y.1978) (fifth amendment's due process clause requires that defendant in Rule B attachment proceeding have minimum contacts with the United States as a whole) *with Grand Bahama Petroleum Co. v. Canadian Transp. Agencies, Ltd.,* 450 F.Supp. 447 (W.D.Wash.1978) (*Shaffer* contacts need not be demonstrated in Rule B attachment).[3]

*Shaffer* decided that a defendant cannot be subjected to litigation in a forum on the basis of an attachment of property there that is unrelated to the subject matter of the suit, where the defendant lacks any other significant contacts with the forum. The Court concluded that "all assertions of . . . jurisdiction must be evaluated according to the standards set forth in *Interna-*

*tional Shoe* and its progeny," which govern claims based upon in personam jurisdiction; 433 U.S. at 212, 97 S.Ct. at 2583 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[4] As in *Shaffer,* the debts attached by plaintiffs in the present suit are unrelated to the damages sustained on the S/T Bunker Hill. Moreover, Michelin Spain cannot be said to have created significant contacts with this forum by putting tires on the vessel in Spain since the ultimate destination of these tires was Canada, and not New York.

The fact that Michelin Spain has no contacts with this forum that are directly related to the present suit does not preclude a finding, however, that it satisfies *International Shoe* standards for some other reason. Corporations having substantial continuous contacts with a forum

---

3. Since attachment under Supplemental Rule B is an independent federal basis for the assertion of jurisdiction, wholly apart from any state rules of attachment, its constitutionality would be tested under the standards of the fifth amendment's due process clause, rather than those of the fourteenth amendment. *See Engineering Equipment Co. v. S.S. Selene,* 446 F.Supp. 706, 709 & n. 10 (S.D.N.Y.1978) (citing *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974)), *cert. denied,* 454 U.S. 1164; *Driver v. Helms,* 74 F.R.D. 382, 390–91 (D.R.I.1977), *aff'd in part, rev'd in part,* 577 F.2d 147 (1st Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979)). In *Engineering Equipment, supra,* the court determined that the inquiry under the fifth amendment is whether the defendants have sufficient minimum contacts with the United States as a whole, rather than with the particular state forum. 446 F.Supp. at 709. Since I have determined in the case before me that defendant Michelin Spain has sufficient contacts with New York to meet due process concerns, I will not address *Engineering Equipment's* more liberal interpretation of the fifth amendment standard.

4. In *International Shoe, supra,* the Supreme Court found a Delaware corporation subject to the jurisdiction of a court in the State of Washington in a suit to recover unpaid contributions to the state unemployment compensation fund. In light of the development of modern means of personal service of summons or other forms of notice, the Court found that the traditional basis for in personam jurisdiction—the de facto power of the court over the defendant's person—was

no longer required. 326 U.S. at 316, 66 S.Ct. at 158. Instead the Court found that

> due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

As to amenability of corporations to suit, the court remarked that

> [t]o say that the corporation is so far "present" [in the forum] as to satisfy due process requirements . . . is to beg the question to be decided. For the terms "present" or "presence" are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. . . . These demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.

326 U.S. at 316–17, 66 S.Ct. at 158–59.

Applying these principles to the case before it, the Court found that although the defendant maintained no offices in Washington, it was subject to the court's in personam jurisdiction by virtue of its systematic and continuous contacts with the state, particularly since the suit arose out of these contacts. *Id.* at 320–21, 66 S.Ct. at 160–161.

may be found amenable to suit for claims unrelated to the contacts on the theory that the defendant suffers no unconstitutional hardship in these circumstances by being compelled to litigate in that forum. *See e.g., Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (federal due process clause does not prevent Ohio court from exercising in personam jurisdiction over foreign corporation having continuous and systematic, but limited, business activities in Ohio, even though cause of action was unrelated to those contacts and was filed by nonresident of Ohio); *Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017, 1022–23 (2d Cir.1978) (exercise of jurisdiction on the basis of attachment of unrelated debts held proper where defendant had "sufficient minimum contacts to make it fair and just that the foreign corporation be required to come to New York to defend the action that was begun by attachment"); *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965) (upholding in personam jurisdiction in action arising out of plane crash in Europe where defendant's sole contact with New York was the maintenance of a small office to receive travel reservations for European flights); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917) (corporation engaging in substantial business with New York is amenable to suit there even for actions unrelated to these business contacts). Michelin Spain's continuous contacts with this forum are derived from its tire sales to New York. Tire sales to MTC, which are consummated with MTC's main office in this District, total approximately fifty million dollars per year, and make up roughly 30% of Michelin Spain's export sales.

Although Judge Knapp already determined that these continuous contacts are insufficient to establish in personam jurisdiction over Michelin Spain, they nevertheless may be sufficient for purposes of in rem jurisdiction. This possibility was suggested both by the concurring opinions of Justices Powell and Stevens in *Shaffer,* in which they observed that quasi-in rem jurisdiction retains some independent vitality apart from in personam jurisdiction. *Shaffer, supra,* 433 U.S. at 217, 97 S.Ct. at 2586 (Powell, J. concurring) (reserving judgment "on whether the ownership of some forms of property whose situs is indisputably and permanently located within a State may, without more, provide the contacts necessary to subject a defendant to jurisdiction within the State to the extent of the value of the property); 433 U.S. at 217, 219 (Stevens, J. concurring) (reading Court's holding narrowly and suggesting the retention of quasi-in rem jurisdiction "over persons with adequate notice of both the particular controversy and the fact that their local activities might subject them to suit"). *See* Silberman, *Shaffer v. Heitner: The End of an Era,* 53 N.Y.U.L.Rev. 33, 72–77 (1978).[5] It is also suggested by the Second Circuit's opinion in *Intermeat, supra,* where the court found the minimum contacts requirements of both the attachment provisions of the N.Y.C.P.L.R. and the Due Process

---

**5.** Professor Silberman raises three independent grounds for arguing the continued vitality of quasi-in rem jurisdiction. First, she suggests that "certain minimum contacts that are insufficient when standing alone in an in personam action might pass the constitutional threshold in a quasi-in rem action when coupled with the attachment of the defendant's property in the state." 53 N.Y.U.L.Rev. at 72. Second, she suggests that "the presence and attachment of more traditional kinds of property such as bank accounts, real estate, and the like, provide the requisite contacts." *Id.* at 74. In support of this second theory, she cites the Powell and Stevens concurrences, as well as the *Feder* case, discussed *infra* in the text. Third, she suggests that

quasi-in rem jurisdiction will remain a viable source of jurisdiction "when no alternative forum is available." *Id.* at 76. This theory is based on the fact that Justice Marshall specifically excepted from the Court's holding "the question whether the presence of a defendant's property in a State is a sufficient basis for jurisdiction when no other forum is available to the plaintiffs." *Shaffer, supra,* 433 U.S. at 211 n. 37, [97 S.Ct. at 2583]. The first and third of these grounds are particularly relevant to the present case, for the reasons offered below.

For another discussion on the continuing vitality of quasi-in rem jurisdiction, see Smit, *The Enduring Utility of In Rem Rules,* 43 Brooklyn L.Rev. 600 (1977).

Clause to be satisfied for purposes of quasi-in rem jurisdiction, even though the district court had earlier found insufficient contacts to satisfy the "doing business" requirement embraced by § 301 of the N.Y. C.P.L.R. for purposes of in personam jurisdiction. 575 F.2d at 1022–23.[6] By attaching debts unrelated to his claim, the plaintiff in *Intermeat* was permitted to sue for breach of a contract that, although not entered into in New York, "had substantial connections with that State." *Id.* at 1023 (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Particularly relevant to the present case is the court's statement that "while [it] need not decide whether *in personam* jurisdiction could have attached in this case, it seems evident that the 'substantial connection' of the contract with New York must be considered along with the added factor of the attachment of an intangible within the jurisdiction of the state in weighing the 'minimum contacts' required for Fourteenth Amendment due process." 575 F.2d at 1023.

Michelin Spain argues that since it has no agent in New York, it cannot be said to maintain the continuous contacts required to sustain a Shaffer-type attachment of debts unrelated to the cause of action. In so doing, it seeks to distinguish the present suit from other suits in this Circuit where Rule B(1) attachments or state attachment remedies provided via Rule B(1) were upheld because of the court's finding that the defendant's contacts with the forum were sufficient to meet due process concerns. *See, e.g., Amoco Overseas Oil v. Compagnie Nationale Algerienne,* 605 F.2d 648 (2d Cir.1979) (attached debts related to matter in controversy); *Adidas (Canada) Ltd. v. S.S. Seatrain Bennington,* 80 Civ. 1922 (S.D.N.Y. March 14, 1983) (large sales volume through New York agent); *Engineering Equipment, supra,* 446 F.Supp. at 708 (forum used to further defendant's overall sales and attached debts related to subject matter of suit).[7] In several other respects, however, this suit is similar to *Amoco* and *Engineering Equipment, supra,* as well as other cases in which quasi-in rem jurisdiction was upheld. Based on these similarities, I find this case to be appropriate for the exercise of quasi-in rem jurisdiction.

In *Feder v. Turkish Airlines,* 441 F.Supp. 1273 (S.D.N.Y.1977), quasi-in rem jurisdiction was upheld in a wrongful death action against a foreign airline arising out of an accident occurring over Turkey. Jurisdiction was based on the attachment of a New York bank account voluntarily opened by the defendant, even though the account was totally unrelated to the action. The court stated that, in opening the bank account, the defendants had availed themselves of the forum, and thus could not claim that the filing of a suit against it was totally unforseeable. *Id.* at 1277–79 & 1279 n. 5. *See also Amoco, supra,* 605 F.2d at 655 (had there been default in payment of the attached debts, the defendant might have sued on those debts in the forum); *Intermeat, supra* (defendant's agreement to arbitrate in the forum poten-

---

**6.** New York law provides for the attachment of any debt, "whether it was incurred within or without the state, to or from a resident or non-resident." N.Y.C.P.L.R. §§ 6201, 5201. This contrasts with the traditional "doing business" requirement for in personam jurisdiction that is incorporated by § 301 of the N.Y.C.P.L.R. *See infra* section III A.

**7.** As Seatrain observes, a requirement that attached debts be directly related to the cause of action would have the practical effect of substantially limiting the time period in which quasi-in rem actions can be commenced. Since many commercial transactions require payment within one or two months of delivery, a poten-

tial plaintiff would be limited to this time period to perfect attachment of debts resulting from these transactions, for the money owing to the foreign creditor may leave the forum shortly thereafter. This added hardship seems particularly unnecessary in the present case, where Michelin Spain continuously has credits owing to it in New York from a single debtor, MTC, but where the specific source of these credits rapidly changes as payments are made and the proceeds transferred to Spain. No interests relevant to due process concerns are served here by requiring that the particular debts attached be related to the specific transactions giving rise to the suit.

tial disputes arising out of *other* contracts deemed relevant to the "minimum contacts" test); *Engineering Equipment, supra,* 446 F.Supp. at 210 ("the defendants could reasonably have foreseen that litigation relating to the [attached debts] could take place in the United States"). Similarly, in this case, Michelin Spain's sales to New York, and its accumulation of credits there, were purposeful acts that rendered suit in this forum not unlikely. This is a far cry from the case in which a defendant is hailed into court on the basis of attached debts that moved into the forum through no affirmative act of his own. *Compare Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905) (permitting attachment of debts temporarily and adventitiously located in the forum state, even though debt was created elsewhere).

Two additional factors, cited by the Court in *Amoco Overseas, supra,* militate in favor of the assertion of jurisdiction here. First, it should be noted that in *Shaffer,* the defendant was readily available for suit in other states. In fact, Justice Marshall, writing for the Court, specifically excepted from the Court's holding "the question whether the presence of a defendant's property in a state is a sufficient basis for jurisdiction when no other forum is available to the plaintiffs." 433 U.S. at 211 n. 37, 97 S.Ct. at 2583. Here, as in *Amoco,* dismissal of the suit in this District may render the defendant unavailable for suit in any court in the United States. This element of "jurisdiction by necessity" was cited by the *Amoco* court as a factor contributing to the assertion of jurisdiction. 605 F.2d at 655. *See supra* n. 2.

Secondly, the *Amoco* Court stated that "even if the *Shaffer* rule of 'minimum contacts,' 'fair play' applies in the realm of jurisdiction by attachment in admiralty .... that application must be understood in the light of the special history and circumstances of that unique body of law." 605 F.2d at 655 n. 5 (citing *Grand Bahama, supra*). In particular, the court cited the peripatetic nature of the defendant and the independent constitutional bases in admiralty suits as factors justifying the formulation of different jurisdictional policies for admiralty attachment. It concluded, "not only that jurisdiction by attachment of property should be accorded special deference in the admiralty context, but also that maritime actors must reasonably expect to be sued where their property may be found." [8]

Overall, I conclude that Seatrain's third-party quasi-in rem action against Michelin Spain pursuant to Rule B(1) should not be dismissed. Given the level of purposeful contacts between Michelin Spain and this forum, and in consideration of the fact that there is no more appropriate forum in this country for asserting suit over Michelin Spain in this matter, I find that *Shaffer's* due process requirements, even if they should be applicable to maritime cases, have been fulfilled.[9]

### B. *Forum Non Conveniens*

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91

---

**8.** It is noteworthy that the court in *Amoco* relied on this general principle without making any specific finding that the defendant in that case was peripatetic. Michelin Spain argues that since it maintains a continuing stable business in Spain, it cannot be deemed peripatetic. It seems clear from the language in *Amoco,* however, that the court was speaking of a general principle to govern maritime cases, regarding which an inquiry into the particular circumstances surrounding the defendant's business is irrelevant.

**9.** Seatrain has also cited § 6201 of the New York Civil Practice Law and Rules (McKinney 1980) as authority for attaching debts owing to Michelin Spain. Since I have already upheld attachment under Supplemental Rule B, it is unnecessary to discuss the merits of this alternative ground of attachment. I note in passing, however, that my findings here regarding satisfaction of the minimum contacts requirement would be applicable to a § 6201 attachment as well.

L.Ed. 1055 (1947). In determining whether to dismiss a case on grounds of forum non conveniens

> "[a]n interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.... [T]he plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

*Id.* at 508. *See also Canada Malting Co. Ltd. v. Paterson S.S. Ltd.,* 285 U.S. 413, 422–23, 52 S.Ct. 413, 415, 76 L.Ed. 837 (1932) (approving the doctrine of forum non conveniens in maritime case where the litigation is between foreigners).

The validity of this analysis was confirmed in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The Supreme Court overruled a determination by the Third Circuit Court of Appeals that the district court had abused its discretion when it dismissed an action arising out of a plane crash in Scotland for forum non conveniens. Relevant to the Supreme Court's decision was the place of the accident; the foreign nationality of the decedents and the persons involved in the use, servicing and maintenance of the aircraft; and Scotland's strong interest in the resolution of the controversy. *See id.* at 259–60, 102 S.Ct. at 255. *See also Overseas National Airways, Inc. v. Cargolux Airlines International,* 712 F.2d 11 (2d Cir.1983) (affirming dismissal on forum non conveniens grounds of action arising out of accident in Luxembourg where necessary witnesses and documents were located in Luxembourg).

Michelin Spain argues that application of the principles of *Gilbert* and *Reyno* would result in dismissal of the present third-party action. In support of this contention, it points out that Seatrain's third-party complaint raises factual issues arising out of events in Europe, such as the packing of the tire containers at Michelin Spain's plant in Spain; the custody of the containers at the loading port of Bilbao; the loading of the containers aboard the Atlantic Count by agents of Seatrain residing in Spain; the off-loading of the containers at Le Havre, France, and their stowage aboard the Bunker Hill by Seatrain's agents; possible unloading of these containers at Rotterdam and Bremerhaven; and the handling of the cargo at sea by Seatrain and/or C.M.C.R. According to Michelin Spain, both the witnesses and the documentation relevant to these events are located in Europe and primarily in Spain. Furthermore, Michelin Spain argues that whatever public interest concerns are at stake here belong to Spain since the alleged breach of a duty emanated from that country. In contrast to litigating the third-party claim in Spain, Michelin Spain contends that suit in the United States would be a costly and inconvenient means of resolving a dispute in which the United States has no interest.

In listing the factors that favor the transfer of the third-party claim to a Spanish forum, Michelin Spain minimizes one critical factor that arises from the overall posture of this case. Since Seatrain already must defend the action commenced by plaintiffs in this forum, to compel it to litigate elsewhere its own third-party action, arising out of the same voyage of the Bunker Hill, would cause it substantial hardship. In light of the Supreme Court's pronouncement that the interests of the plaintiff are paramount, *see Piper Aircraft, supra,* 454 U.S. at 255, 102 S.Ct. at 1254; *Gulf, supra,* 330 U.S. at 422, 67 S.Ct. at 815, this consideration merits closer attention.

Michelin Spain cites *Olympic Corp. v. Societe General*, 462 F.2d 376 (2d Cir.1972) for the proposition that an impleader action may be dismissed on grounds of forum non conveniens even though jurisdiction over the underlying action is maintained. In *Olympic*, the Second Circuit affirmed the district court's dismissal of a third-party action between a French bank and a French corporation for forum non conveniens, even though it overruled, as an abuse of discretion, the dismissal of the underlying action between a Massachusetts company and the French bank. The underlying action was a suit against the French bank·for wrongfully releasing documents to the French corporation, while the third-party complaint alleged that the French corporation was responsible for any resulting harm actually suffered by plaintiff Massachusetts company. Since the transactions addressed by the underlying suit took place in both the United States and France, dismissal of this action was deemed to be an inappropriate exercise of discretion. *Id.* at 378–79. As to the impleader, however, the court found all the relevant transactions to have taken place in France, so that dismissal for forum non conveniens was appropriate. *Id.* at 379.

Despite the similarities that *Olympic* bears to the present action, the case is clearly distinguishable in several important respects·and is thus not controlling here. In regard to the third-party plaintiff's interest in trying both actions in the same forum, the court in *Olympic* noted that jurisdiction over impleader actions was discretionary, and remarked that:

> the difference in legal issues between plaintiff Olympic and Societe and between Societe and Protex is such that it is unlikely that a separate trial of the matter will produce inconsistent results. Olympic's claim is grounded in the contention that Societe disregarded its instructions by releasing the documents to Protex 'on approval.'
> Societe defends on the basis that its actions were in accord with French banking practice, but goes on to claim that any harm done was the result of Protex's failure to make timely response to Societe's requests for instructions regarding payment of Olympic's draft. Thus it is quite conceivable that even if all claims were tried together, Societe might be liable to Olympic but not entitled to indemnification from Protex.

*Id.* at 379. *See also Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343–44 (8th Cir.1983) (dismissing third-party action for forum non conveniens based on determination that the issue surrounding the underlying and third-party claims differed).

In the present case, there is the similar possibility that defendant Seatrain will be found liable in the underlying action without recovering from Michelin Spain. However, the issues in the underlying claim and the third-party claim cannot be as readily separated here as they were in *Olympic, supra.* Seatrain has moved to implead Michelin Spain under Rule 14(c) governing admiralty and maritime claims. This Rule, which reflects the historically liberal third-party practice in admiralty cases, entitles a defendant, *inter alia*, to demand judgment directly in favor of the plaintiff and against the third-party defendant. *See* 6 Wright & Miller § 1465, at 340–44. Seatrain seeks to employ this element of the rule by alleging that Michelin Spain is liable· directly to plaintiff because of the allegedly negligent handling of its tires. A finding of negligence on the part of Michelin Spain would mitigate, and possibly preclude, liability against Seatrain, for § 1304(2)(i) of COGSA states that the carrier will not be responsible for loss or damage resulting from an "[a]ct or omission of the shipper or owner of the goods, his agent or representative." Since the issues surrounding Michelin Spain's allegedly negligent activities in Europe are relevant not only to Seatrain's potential indemnification via third-party action, but also to Seatrain's immediate defense of the underlying action, the two actions are not conveniently separable, as they were in *Olympic, supra.*

■ In other contexts in which the underlying and third-party actions emanated

from the same events, the interest in having a single forum litigate both disputes was deemed relevant to resolution of the forum non conveniens question. For example, in a case where the dismissal of the primary action on grounds of forum non conveniens was upheld, the Second Circuit found that the possibility of litigating the primary action and the third-party action in another forum (which was the only forum in which both actions could be litigated simultaneously) was a significant factor. *See Alcoa S.S. Co. Inc. v. MIV Nordic Regent*, 654 F.2d 147, 159 (2d Cir.1941) (en banc) (citing with approval the district court's opinion, 453 F.Supp. 10, 13 (S.D.N.Y.1978)). Even in *Olympic, supra,* the court acknowledged that the "benefits of impleader might be taken into account in a case in deciding whether or not to dismiss for forum non conveniens." 462 F.2d at 376. It was only because of "the overwhelming evidence that [plaintiff] Olympic should be permitted to sue in the United States and that [third-party defendant] Protex should not be forced to defend [there]" that the court discounted this consideration. *Id.* Since, as already indicated in Section II, Michelin Spain maintains sufficient contacts with this forum to anticipate litigation here, and since Seatrain is both the third-party plaintiff in the action against Michelin Spain and a party compelled to litigate the underlying claims in this forum, I find the joinder of the third-party claims here to be an appropriate discretionary exercise of this Court's jurisdiction.

### III. *C.M.C.R.'s Motion To Dismiss:*

C.M.C.R. has put forth two alternative arguments for dismissing the in personam claims against it. First, it argues that there are insufficient contacts between it and this forum to satisfy the due process requirements for jurisdiction in this Court. Secondly, it argues that it is not a carrier under the Carriage of Goods on the Sea Act, 46 U.S.C. § 1300, et seq. ("COGSA"). In addition, C.M.C.R. seeks to dismiss several of the in rem actions against the vessel on the ground that it was not properly attached.

### A. *C.M.C.R.'s Motion to Dismiss on Jurisdictional Grounds*

#### 1. *In Personam Jurisdiction*

In order to sustain the jurisdiction of this Court, plaintiffs must demonstrate that both the state statutory requirements as well as federal due process considerations have been satisfied. Section 301 of the N.Y. C.P.L.R. provides that New York courts may exercise jurisdiction over "persons, property, or status as may have been exercised heretofore." This provision embraces traditional bases of jurisdiction such as a defendant corporation's presence in New York, or its "doing business" in New York on the basis of its "continuous and systematic" conduct within the district. *See Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267–69, 115 N.E. 915 (1917) (corporation engaging in substantial business in New York found "present" in that forum, and becomes subject to jurisdiction there by service of process on its New York agents); *Bryant v. Finnish National Airlines, supra.* Plaintiff cargo owners argue that C.M.C.R. is "present" in New York by virtue of the activities of its alleged agent, Atlantic Overseas Corporation (AOC), which was served in this suit. *See Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237 (S.D.N.Y.1977).

Third-party plaintiff Seatrain argues that, as to its claim against C.M.C.R., in personam jurisdiction is vested in this Court by virtue of the New York "long-arm" statute, § 302(a)(1), which provides in pertinent part as follows:

Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. Transacts any business within the state

. . . .

Seatrain claims that its charter contract was executed in New York, and that it was carried out in New York insofar as a bank account was maintained for the transfer of funds owing to C.M.C.R. under the charter and insofar as C.M.C.R. agreed to arbitrate disputes here. On these grounds, Seatrain alleges jurisdiction for its claims under the Charter Party. See *Larina Shipping, Inc. v. Hidrocarburos Y. Derivados, C.A. ("Hideca")*, 1974 A.M.C. 2191 (S.D.N.Y.) (Venezuelan charterer found subject to court's jurisdiction under New York's long-arm statute for alleged breach of charter party negotiated on its behalf by New York broker, even though defendant was not present in New York and all negotiations relating to the charter were made by telex or telephone).

C.M.C.R. does not dispute, either on statutory or constitutional grounds, that it would be subject to this Court's jurisdiction if AOC was in fact its agent when the events surrounding this action arose or if the Charter Party was executed in New York. Instead, it disputes these factual allegations. As to AOC's relationship with it, C.M.C.R. argues that the agency terminated after 1979, when AOC's activities on its behalf were substantially curtailed and were thereafter properly characterized as "husbanding" activities only. To this end, it offers affidavits and deposition testimony to the effect that the agency agreement ceased as of 1979 and that few cargo and personal injury claims were subsequently handled on behalf of C.M.C.R. by AOC's attorneys. As to the situs of the Charter Party, C.M.C.R. offers proof that it was actually entered into in France, that the New York bank account was used merely for immediate transfer of funds to France,

and that its agreement to arbitrate disputes here is not a consent to New York jurisdiction.

█ A mere reading of these factual disputes should indicate that the issues are not ripe for a motion to dismiss on jurisdictional grounds. The cargo owners have offered proof in the form of affidavits and deposition testimony in support of their theories that AOC and C.M.C.R. maintained a substantial enough relationship after 1979 to justify a finding of an agency relationship and the assertion of in personam jurisdiction over C.M.C.R. *See, e.g.*, Diercxsens deposition. Even if C.M.C.R. was in the process of withdrawing its business with AOC, it may still remain subject to the Court's jurisdiction during this period of time. *See Smith v. Compania de la Habana*, 121 Misc.Rep. 368, 201 N.Y.S. 65 (Sup. Ct., Kings Co. 1923); *Tauza, supra*. Seatrain has similarly adduced evidence in support of its theory that the Charter Party was entered into in New York. *See, e.g.*, Raleigh Affidavit. It is likely that both of these issues will be clarified when discovery continues or, if not, at trial. In the meantime, it would be inappropriate for this Court to resolve these jurisdictional issues conclusively in C.M.C.R.'s favor on the basis of this contradictory evidence. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1351, at 566–67.[10]

### 2. In Rem Jurisdiction

C.M.C.R. has moved to dismiss the in rem actions against the vessel for lack of jurisdiction, with the exception of two claims—80 Civ. 7230 and the claim of Hugin Cash Registers, Inc. in 81 Civ. 551—in which it had consented to jurisdiction by filing a claim of owner. As to the other

---

**10.** According to Wright & Miller,

> In particularly complex cases … it may be desirable to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction. Doing so will enable the parties to employ discovery on the jurisdictional issue, which might lead to a more accurate judgment than one made solely on the basis of affidavits. Rule 12(d) gives the court discretion to delay its determination of the motion.

*Id.* § 1351, at 566–67.

This reasoning is particularly applicable here, given the parties' efforts to inundate this Court with last-minute communications regarding the situs of the Charter Party and the services performed by AOC for CMCR. Should further clarification be deemed necessary following completion of discovery on these factual issues, this Court may in its discretion, order an evidentiary hearing. *See Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

actions, plaintiffs have been unsuccessful in perfecting service of process over the vessel, as required by Supplemental Admiralty Rule C (3) of the FRCP, even though the vessel was apparently present in the districts of New Jersey and Florida in 1980. C.M.C.R. argues that it is unlikely that the vessel will reappear in United States waters, since the vessel has been sold to a new company and does not trade in the United States. On this ground, C.M.C.R. seeks dismissal of the in rem claims.

■ Since I have denied C.M.C.R.'s motion to dismiss the in personam actions against it, my determination as to the in rem claims may be of little significance. I am nevertheless ruling that since the plaintiffs named in this motion have failed either to serve the vessel or to demonstrate any likelihood that the vessel will appear in New York waters in the future, their in rem claims should be dismissed. *See The Everosa,* 93 F.2d 732 (1st Cir.1937); *Crispin Co. v. The S.S. Jowood,* 1973 A.M.C. 2623 (S.D.N.Y.).

### B. *C.M.C.R.'s Motion To Dismiss Under COGSA*

■ Every bill of lading that evidences a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, including bills of lading issued under or pursuant to a charter party, is subject to COGSA, 46 U.S.C. §§ 1300, 1301(b). COGSA provides for in personam liability upon "carriers" of goods by sea. 46 U.S.C. § 1302. "Carrier" is defined as "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C. § 1301(a). According to § 1301(b), a bill of lading is a contract of carriage.

C.M.C.R. argues that in the present case it cannot be considered a "carrier" under COGSA, and thus cannot be found liable for the damage sustained to plaintiff's cargo. In support of this argument, it alleges that the bills of lading for the voyage were issued by defendant Seatrain, that only Seatrain's name appears at the top of the bills; that C.M.C.R.'s signature does not appear on any of the bills; and that C.M.

C.R. did not in any way authorize defendant Seatrain or any of the other co-defendants to sign bills of lading. In addition, C.M.C.R. refers the Court to clause 8 of its charter party with Seatrain, which states:

8. That the captain shall prosecute his voyages with the utmost dispatch, and shall render all customary assistance with the ship's crew and boats. The captain (although appointed by the owners) shall be under the orders and directions of the charterers as regards employment and agency; the charterers are to load, stow and discharge the cargo at their expense under the supervision of the captain, *who is to sign bills of lading for cargo as presented, in conformity with mate's or tally clerk's receipts.*

(emphasis added).

In support of the proposition that the above facts preclude an in personam claim against the vessel owner, C.M.C.R. cites *Demsey & Associates v. S.S. Sea Star,* 461 F.2d 1009 (2d Cir.1972). In *Demsey,* the Second Circuit affirmed the district court's finding that recovery against a ship owner for damages sustained to plaintiff's cargo was limited to an action in rem. The court interpreted COGSA as follows:

The fact that [the vessel] was operated under charter ... does not affect the liability of [the vessel]. *Pioneer Import Corp. v. The Lafcoma,* 49 F.Supp. 559 (S.D.N.Y.), *aff'd* 138 F.2d 907 (2d Cir. 1943), *cert. denied sub nom Black Diamond Lines, Inc. v. Pioneer Import Corp.,* 321 U.S. 766, 64 S.Ct. 523, 88 L.Ed. 1063 .... Although the Master did not sign the bills of lading, the sailing of [the vessel] with the [cargo] aboard constituted a ratification of the bills of lading. Because, however, [the owner] did not authorize [the Charterer's] agent to issue the bills of lading [the owner] is not liable *in personam....*

We therefore affirm the District Court's finding that a prima facie case has been made out against [the charterer and the owner] (in rem).

461 F.2d at 1014-15.

The determination as to when the owner of a vessel is subject to in personam liabili-

ty under COGSA was further refined in more recent district court opinions, most notably *Joo Seng Hong King Co., Ltd. v. S.S. Unibulkfir*, 483 F.Supp. 43 (S.D.N.Y. 1979). In denying a motion to dismiss based on the argument that the defendant shipper and consignee was not a "carrier," the court outlined the following three factors to determine who may be subject to suit under COGSA:

(1) who signed the bills of lading;

(2) whose form was used for the bill of lading;

(3) was authority given to sign the bill of lading on behalf of another.

483 F.Supp. at 45. The court in *Joo Seng* encouraged a broad reading of COGSA liability, finding strong statutory support for treating all owners and charterers involved as COGSA carriers, but it indicated that an exception should be made where one party expressly assumes exclusive carrier status. *Id.* at 46 & n. 7 (citing *Yeramax International v. S.S. Tendo*, 595 F.2d 943 (4th Cir.1979)). *See also Tube Products of India v. S.S. Rio Grande*, 1971 A.M.C. 1629 (S.D.N.Y.) (vessel owner held not responsible for damage to cargo upon finding that bills of lading were signed by time charterers "for the master," and that the vessel owners did not authorize the charterers to do so).

Admittedly, the facts alleged by C.M.C.R. support dismissal of the in personam claims against it, since none of the factors listed in *Joo Seng* appear to be present here. Moreover, clause 8 of the Charter Party is identical to the clause relied on in *Tube Products, supra,* to preclude in personam liability for the vessel owner. It would be premature to dismiss the in personam claims against C.M.C.R. on this ground, however, as plaintiffs have not had sufficient opportunity to discover facts relevant to the question of whether C.M.C.R. authorized the signing of the bills of lading. In all of the cases cited by C.M.C.R., the in personam claims against the owner were dismissed at a later stage of the trial when the facts were more fully developed. *See, e.g., Demsey, supra* (appeal from interlocutory order which followed full development of relevant facts); *Tube Products, supra,* (findings of fact and conclusions of law under Rule 52(a) of FRCP). I find that a similar course would be prudent here and therefore I am denying the motion to dismiss insofar as it is grounded in COGSA.

## IV. *Michelin Canada's Motion to Dismiss C.M.C.R.'s Counterclaim*

C.M.C.R.'s counterclaim alleges two causes of action: (1) for negligent and improper stowage of the consigned tires with joints; and (2) for breach of warranty or breach of contract by failing to provide a shipment suitable for carriage on board the vessel. Regarding the second cause of action, Michelin Canada asserts that it has made no agreement, either express or implied, warranting proper packing and shipment of the tires. In response, C.M.C.R. argues that Michelin Canada, as a named consignee on the short form bill of lading, is bound by the provisions of Seatrain's long form bill of lading. Clause 9 of this bill of lading states that "[t]he shipper, the consignee and the goods, jointly and severally, shall be liable for, and shall indemnify Seatrain and the ship against" damages caused by cargo tendered for carriage.

Assuming that C.M.C.R. is correct in asserting that this bill of lading clause could be binding on Michelin Canada, the clause would still only be binding insofar as it did not conflict with the provisions of COGSA. 46 U.S.C. § 1304(3) provides that "[t]he shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault or neglect of the shipper, his agents or his servants." This provision has been interpreted to abolish any common law warranty, and to require that a carrier prove actual fault or neglect on the part of the shipper in order to recover damages or be indemnified. *See Serrano v. United States Lines Co.*, 238 F.Supp. 383, 388 (S.D.N.Y.1965). Furthermore, § 1304(3) has served as the basis for

invalidating "hold harmless" clauses similar to the one here. *See Sealand Service, Inc. v. The Purdy Company*, 1982 A.M.C. 1593, 1596–97 (W.D.Wash.1981) ("This is a negligence statute, not a strict liability statute. Any recovery is governed by COGSA in the context of negligence .... Fault is a prerequisite for recovery under COGSA").

C.M.C.R. seeks to distinguish the above-cited cases by arguing that they only govern warranties signed by the shipper, so that the consignee's warranties are still enforceable. Such a distinction is patently unreasonable and C.M.C.R. has offered no authority to support it. Clearly, the COGSA provisions are intended to limit the liability of a carrier only to the extent that another party is found negligent. *See also* 46 U.S.C. § 1304(2)(q) ("the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage"). To enforce the bill of lading provisions against Michelin Canada here would thwart this statutory design and would have the anomalous result of creating a greater scope of liability for a consignee having no active participation in the shipment of goods than for the shipper itself. I therefore hold that any potential recovery against Michelin Canada must be predicated on a showing of negligence on its part in the stowage and shipment of the goods.

Confined to an action for negligence, C.M.C.R.'s counterclaim cannot withstand Michelin Canada's motion for summary judgment. Michelin Canada has demonstrated through its affidavits that it has no connection with the activities of Michelin Spain apart from its buyer/seller relationship, and that the two companies are entirely separate entities. C.M.C.R. has neither refuted this assertion, nor has it put forth any specific allegations of participation by Michelin Canada in the packing or shipping of the consigned tires. Absent this showing, C.M.C.R. cannot allege any issues of fact for presentation to a jury. As a matter of law, I find that C.M.C.R. is not entitled to recovery against Michelin Canada and its counterclaim is therefore dismissed.

*Conclusion*

Apart from Michelin Canada's motion for summary judgment on C.M.C.R.'s counterclaim (and C.M.C.R.'s motion to dismiss the in rem actions against the vessel), all outstanding motions to dismiss have been denied.

SO ORDERED.